Good afternoon, your honors, Max Schoening, appearing on behalf of Mr. Martinez-Lopez. I'll keep track of my time and try to save two minutes for rebuttal. This court should remand this case for resentencing before a new district judge because the government broke its promise in the plea agreement to recommend a sentence at the low end of its calculation of Mr. Martinez's guidelines range. The government calculated the low end of Mr. Martinez's range to be 8 months as reflected in its amended sentencing chart. But instead of recommending 8 months, the prosecutor at the sentencing hearing explicitly recommended 18 months, and the district judge confirmed on the record that he understood the government to be recommending 18 months. When I objected to the breach, prompting the prosecutor at the hearing to look at the amended chart for the first time, he immediately corrected his sentencing recommendation to 8 months because he understood that that was his obligation under the agreement. But by that time, the damage had already been done. For the entire first third of the sentencing hearing, the government had put into the district judge's mind that it viewed Mr. Martinez as deserving of 18 months. And once that bell was rung, it could not be unrung. Separately, the district court miscalculated the guidelines range, which independently warrants vacating the sentence.  Counsel, one thing that I'd like you to address as part of this argument is I understand your argument that Gomez-Leon, if that's all there was, would control. What I'm having trouble with is distinguishing Buzo Zepeda. In Buzo Zepeda, the parties briefed Gomez-Leon. The case didn't discuss Gomez-Leon at all. And the first line of the case is, we hold that a Johnson waiver in California State Court has no effect on the determination of whether a defendant qualifies for a point increase. Now, I understand your argument that Buzo Zepeda is factually different from this case because there was evidence of a Johnson waiver in Buzo Zepeda. But I'm having trouble getting around the first sentence of Buzo Zepeda where the court says that's what it holds. So you don't have to do it right now, but I'd like you to address that. I'll address it right now. First, we do not need to win on the guidelines issue to win on the breach issue. That issue is independent. I agree with you on that. That's actually what I was about to ask. If you win on the first issue, do you think we need to reach the second issue? Yes, if we win on the first issue, this court should still reach the second issue to correct the district judge's error in calculating the guidelines so that the new judge on remand can apply to collect correct guidelines range as mandated by Gomez-Leon. And this court addressing the guidelines issue would promote judicial economy so that with this fully brief case, this court can clarify and correct the error rather than sending it back to the district judge who could potentially make the same mistake. Now, as to Buzo Zepeda, Buzo Zepeda addresses an instance where there is evidence of a Johnson waiver in the record, and that is why it's factually distinct from this case and factually distinct from Gomez-Leon. Gomez-Leon holds that when there is no evidence in the record of— Excuse me, I thought you had a question. No, no, but let me ask my question again. I understand how the facts are distinguishable. What I'm having trouble with is what the court says its holding is. We hold that a Johnson waiver has no effect. Now, I understand your point that they didn't explicitly overrule Gomez-Leon, and it strikes me that to reach that holding, they might have had to have done that. But what I'd like you to explain to me is if we take that as the holding, what it says the holding is, how do you win here on the substantive issue? If you take that as the holding, I think Gomez-Leon and Buzo Zepeda can be reconciled as follows. When there is evidence of a Johnson waiver, which permits the state court to sentence the defendant in excess of 365 days, then the court can calculate that sentence as being longer than 365 days because of the Johnson waiver. It does not matter that the state court reached a sentence in excess of 365 days because of a Johnson waiver. In other words, where there's a Johnson waiver, the stated maximum sentence is higher than 365 days because the defendant agrees to a sentence higher than 365 days. So the federal court, looking at that prior sentence, that sentence is longer than 365 days because of a Johnson waiver. It does not matter. But doesn't that make the Johnson waiver matter? And the holding was it doesn't matter? I believe the holding is that if there is a Johnson waiver, that does matter. I'm sorry, counsel, but that's not the way I read the holding. I mean, they discuss the Johnson waiver, but the whole thrust of the case is we don't care whether there's a Johnson waiver. He got X the first time, he got Y the second time. We don't care why. We add X and Y, and if it's 13 months, I guess what the district court kept calling here the magic number, then it's three, not two. And we don't care about the Johnson waiver. That's the problem I have distinguishing. Well, to the extent the Buzo Zepeda decision opined on the import of the absence of a Johnson waiver, that was dicta because those were not the facts before the court. And the controlling case would be Gomez-Leon, which directly applies to this case where there is an absence of evidence of a Johnson waiver. So the language in Buzo Zepeda, I understand how it could potentially be interpreted to mean whether or not there is a Johnson waiver, it's lags import. But I think the only way to reconcile those two decisions without concluding that Buzo Zepeda incorrectly overruled Gomez-Leon, which it couldn't because it was not an en banc decision, is to say Buzo Zepeda deals with cases where there is a Johnson waiver. Any statement in that opinion as to the absence of a Johnson waiver is And the controlling case is Gomez-Leon where there is no absence, excuse me, where there is no evidence of a Johnson waiver. And those are the facts we have in this case where there's no absence, there's no evidence of a Johnson waiver. So the court must presume that the original longer sentence included the shorter sentence. And I do want to take the opportunity to explain because there may be some questions of how Mr. Martinez could have received the additional 60 days without giving a Johnson waiver. And the explanation lies in the difference between a waiver of custody credits under Johnson, and on the other hand, waiver of good time credits under California Penal Code Section 4019. What likely happened is Mr. Martinez waived his good time credits. And the crucial difference is that when you waive your custody credits, it allows the state court to sentence you in excess of 365 days. But by simply waiving- Counsel, did you make that argument to the district court here? I made that argument. I made that specific argument as to good time credit was not made to district court. It was made both in my opening brief and- Yes, I understand that. I couldn't find it anywhere where you made that argument to the district court. Well- And, but this case, it could have had no waiver. It could have had a good time waiver. It could have had a Johnson waiver. I mean, there's nothing about the facts of this case that would have precluded either no waiver or a Johnson waiver. Right? That's correct. But the burden is on the government to prove a sentencing enhancement, which is that issue here. So the government, the burden is on the government to show the existence of the Johnson waiver. And just like in Gomez Leon, there is no evidence in the record of a Johnson waiver. So it's not our burden to explain those sentences. It's the government's burden to show that there's a Johnson waiver. And without the Johnson waiver, the stated maximum sentence, which under application note two of guidelines, section 481.2 states when the federal court is calculating the length of the prior sentence, it looks to the stated maximum. So a stated maximum in California absence, the Johnson waiver is 365 days. And the waiver of good time credits is simply an adjustment of credits towards that 365 day sentence. And the probation documents, which are in the record here for the violation support that conclusion because it says that the 365 day sentence upon revocation was quote reinstated under quote the same terms. Just, I just want to make sure that, and I don't have a great deal of familiarity with California state court criminal law, but I just want to make sure that withstanding what you pointed to in the record with suspended reinstated, this still could have been a Johnson waiver in this case that what you've pointed to doesn't preclude that and doesn't mandate that there was a good time waiver. Is that right? I'll be very brief because I do want to save some time for rebuttal, but I don't think that the record precludes absolutely precludes, but it's not our burden to point to documents precluding it. Those same records, the ambiguity and the lack of evidence of an affirmative Johnson waiver is the facts that happened in Gomez Leon. And that is the ruling that controls the outcome in this case. Thank you. The council will give you a minute or two for rebuttal. Let's hear from the government. Good afternoon. May I please the court Joseph Green on behalf of the United States. I'll start with the plea agreement. In this case, the United States did not reach the plea agreement with Mr. Martinez because we had no particular agreement with him about how his basic offense characteristics of the guidelines or with respect to his criminal history score in this district. It is routine that the parties in some cases do agree on how a criminal conviction scores, but they did not do so in this case, the language about what the government had to recommend was meaningless. No, no, Your Honor. I don't, I don't believe that it was the, the terms of the plea agreement were very clear. And Mr. Martinez negotiated the base offense level. He negotiated a third point for acceptance for, for fast track. And what he bargained for was that at the time of sentencing, the government would recommend what it believed was the correct scoring of the, of the offense. And ultimately he, he got that here and Your Honor, we would distinguish this case from the line. I want to make sure I fully understand your position here is your position because that's what I took from your brief that recommending 18 at the sentencing didn't breach the plea agreement, not just because it was corrected, but because even if he'd kept to the 18 the whole time, it wouldn't have been a breach. Is that the government's position? No, no, Your Honor. Our position would be that under the plea agreement, the defendant bargained for the sentencing recommendation that the government believed was correct. Correct. At the time, which is right. Correct. But so, so then at the time the AUS, the substitute AUSA said 18 that if he had kept to it would have been a breach of the plea agreement, right? If he had maintained it. Yes. If he had kept to it, you know, unaware of the eight month recommendation. Yes. So then what would I have a problem with here? I've read this fairly long sentencing transcript and it is very unclear to me that this had no impact on the district judge. I mean, I can see sentencing transcripts where it would be very clear that the judge didn't care or he understood or, or whatever. But I mean, in this case, the judge got mad at the defense or it sounded like the judge got mad at the defense council for even accusing the government of a breach. I mean, it's very hard for me to see to conclude without with any certainty that this had no effect on, on the judge. What is your argument on that point? Well, I believe that the argument there your honor would be that this case is different because this is not a united front plea agreement. This is a plea agreement that allowed the government to make its recommendation for what it believed correct at the time of sentencing. So, so the government initially recommended 18 months in its initial sentencing summary chart. And that was before the court. And I think what,  Martinez never claimed that that initial recommendation was a breach. Because there wasn't, there wasn't an agreement for a united front. And we would certainly acknowledge that it was, you know, clumsy that the, the calendar assistant was unaware of the amended recommendation, but this case is different because there was not such an agreement to have, you know, the united front at sentencing in terms of its impact, you know, judge Burns went on at length about the reasons that it believed the sentence was correct. So I, I believe that the record is well supported there. But, but we do believe that this case is distinguishable from the breach cases because there wasn't an agreement about how this scored. And if anything, this conversation that we're having about Gomez Leon, you know, illustrates the reason for that. And that is that sometimes it's not altogether clear how these convictions score. And this plea agreement gave the government the discretion to change its view of how it scored. And it did so in a, in a way that was favorable to Mr. Martinez, even if it was somewhat clumsily executed at the time of sentencing. If it pleases the court, I'll, I'll turn to the, to the second issue. Gomez Leon. We, we believe that the district court did not air. I'm in scoring Mr. Martinez's criminal history. Alternatively, if there was any error, then any error was harmless. First, I would, I would point out that the facts of Gomez Leon are in fact, distinguishable from our case, even though they are very similar and, and, and very importantly in our case, Mr. Martinez, he was given 365 days of time right out of the gate, whereas Mr. Gomez was given one 27. So once Mr. Martinez had been given 365 days, there is no way under California law, which we should presume that the courts followed that he could have gotten more time other than if some waiver had been in, in, in effect. So he couldn't have gotten more time in jail. He correct. Thank you. You are clarifying that he couldn't have gotten more local time that once he got 365, there was no way that he could have gotten another day of local time in light of California penal code 19, two, unless there was a waiver. So there's no, a good time credit waiver as your opposing counsel was describing would have done it. You're right. I would say that it would be the same result that either, either he got a Johnson waiver or a good time credit waiver, but that unlike Gomez Leon, the second sentence wouldn't have just been included in the first one. And, and I believe that even, even at the sentencing hearing, you know, while charging that the government had failed to get proof of the waiver, Mr. Martinez counsel, you know, explained over and over again, at least on two occasions that what likely happened here was that they got a waiver of the, of the custody credits or his good time credit. So counsel, let me, let me go back a minute where you're talking about how Gomez is distinguishable. I'm reading from Gomez beyond where the court said the record contains no evidence that Gomez consented to receive a total period of jail time in excess of 365 days without such consent, the 365 days would have had to include the prior 127 days. So explain to me how our case on the facts as you see them is distinguishable from that circumstance described by the court and Gomez Leon. Yes. Your honor. First I would acknowledge it's a pretty small distinction. I think it's only, there's only one fact that distinguishes them, but what I was saying is that in Gomez Leon, the defendant first got 127 days. So at least theoretically, when the court imposed 365, it was basically increasing the total sentence to 365, right? So he first got one 27, then he got three 65 theoretically, although I don't think this is accurate. He, the one 27 could have been included in the three 65, but in Mr. Martinez, this case in contrast, like his first probationary sentence was for the full three 65. Minus, minus, minus his good time. Correct. Yeah. Minus any credits, minus any credits that would have applied, right? Because the sentence actually lists the credits because he, he, he'd already been in for a while. Correct. I agree. It would have included it, but he would have been sentenced to three 65, either through custody credits or good time credits. He would have been full. No more local time would have been available. So I think there is one factual distinction and that's, that's the one that, that, that I believe exists, but then second, even if, even if they're not factually distinct, you know, Gomez Leon, this is with respect to the, to the court in that opinion, it's inconsistent with other authority that both preceded it and that follows it. And that authority pretty clearly says that you're not to look. And this was the point your honor was making is that you don't look to state court law. When you're calculating the sentences. So the case that comes before that cited in our brief has Mendoza Morales, three 47 F third, seven 72. I'll be, I would certainly acknowledge the facts are different, but the legal principle is the same. And that is that you're not to look to, to state court law. And that was another California case when you're calculating sentence. So, so just as Gomez Leon couldn't have been overturned by, by, by the case that followed, you know, so to Gomez Leon couldn't have overruled Mendoza. And that does appear to be the, you know, the prevailing view about how the court should approach this. And that is that, that state law is not relevant to doing this calculation. Finally, if there was any error, we do believe it was harmless. You know, I'm short on time. The judge burns ticked off all of the factors. There were four DUIs, multiple driving on suspended licenses. Mr. Martinez had a prior 1326. So counsel, I know you are running out of time, but on the harmless point, what I have some trouble with here is that the judge said, I'm picking 24. I'm picking the sentence. And he said, whether it's guideline range a or guideline range B, but how do we know that it wouldn't have been different? If he had had to pick guideline range a and had to have applied Gomez Leon as the government and the defendant had agreed, how do we know that in that instance, he would have picked the top of the range, the 24, as opposed to going down from the top, like he would have been doing with the higher range. I believe judge Burns addressed it. He did, he did say, and it's on the record. He did say that, that he did believe, did believe that a departure would be appropriate from the higher range. But then he said that a sentence within the lower range would be appropriate. I couldn't find in the record where he said that a lower sentence than the lower range that he rejected a downward variance from there. But, but given the extensive record that judge Burns laid and all of the 35, three 53, a factors, you know, we believe the record makes clear that judge Burns had no inclination whatsoever to give him less than a sentence of 24 months. And for that reason, we believe that a remand would not be necessary on that issue. Okay. Thank you, counsel. Thank you very much. Thank you. We could put two minutes on that for defense. Thank you. I'll briefly address a few points. This court has repeatedly explained that one of the key benefits to a defendant in a plea agreement is the benefit of a united front with the government in presenting a unified sentencing recommendation to the court. And now at this argument, the government is taking what I would consider to be an extreme position that in this plea agreement, there was no united front whatsoever. There was no united front as to a sentencing recommendation. A sentencing recommendation is this government sentencing recommendation is the key. I would say key benefit that a defendant such as mr. Martinez receives in exchange for giving up his constitutional right to trial. So there clearly was a unit there. The benefit that mr. Martinez did plea for was a united front, but the government failed to deliver on its end of bargain by giving, by giving a, by not holding up that end of the deal, the government confuses its freedom to calculate the guidelines range with its freedom to, to recommend a sentence. The plea agreement did allow the government to calculate any range, but it precluded the government from recommending any sentence. Once the government calculated the range, it had to recommend the low end of that range unless it changed its calculation. And here the government failed to do that because it recommended 18 months, even though it calculated the low end to be a council for the government. You've got a remand to a different judge. If you win on this argument, could the government change its calculation? I mean, it seems like they've changed their calculation on appeal. So are you worried that before a different judge, they would change their calculation, what they're arguing now? I would. Well, if this court, as we're requesting the court to do, clarifies that Gomez Leon controls and that the guidelines are calculated, as we calculated, and as the government conceded at the district court below the, no, the government could not, I don't think contradict a binding decision of the ninth circuit. I'm just not totally persuaded yet that we need to reach that issue. It seems like you're confidently telling us that you're right about Gomez. And so if you've got a remand to a different judge, especially if the government couldn't change his position, it seems like you might not need a ruling from us on Gomez. You just go forward with the original deal and presumably get the argument you're hoping for. But is the problem that you're worried that wouldn't happen? I, there, yes, I believe there would, there, there wouldn't be a problem. I mean, the concern would be, yes, the government would, could, could calculate the range under its reading on appeal, rather than what we believe is the correct reading, which is that the sentence did not exceed 13 months. Um, so that is why we're asking for the court to, to, to clarify that, um, for the judge on remand. Okay. Very good. Do you, do you have a concluding thought? Um, the concluding thought is that, um, the government breached the police, the clear agreement. It did have an obligation to recommend the low end. And this court should clarify the guidelines range for the new judge on. So thank you. Very good. Thank you both for your arguments. The case just started submitting.
judges: Watford, Friedland, Bennett